IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EDDIE FRANKLIN FURR, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:16-CV-00821-CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying his claim for disability insurance benefits and supplemental security income. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED.**

BACKGROUND

**I.     PROCEDURAL HISTORY OF THE CASE**

On August 29, 2013, Plaintiff filed his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), and supplemental security income ("SSI") under Title XIX of the Act, alleging an onset of disability date of August 17, 2012 [TR 248-61]. Plaintiff stopped working on or about February 15, 2011 [TR 249]. The claim was initially denied on October 15, 2013 and denied on reconsideration on January 13, 2014 [TR 8, 124-29, 137-44]. Plaintiff requested an administrative hearing, which the Administrative Law Judge ("ALJ") held on March 11, 2015 [TR 34, 41, 145]. At hearing, the ALJ heard testimony

from Plaintiff, Medical Expert Alvin Smith, Ph.D, witness Mark Witham, and Vocational Expert Talesia Beasley [TR 41-71].

On May 15, 2015, the ALJ issued an unfavorable decision, denying Plaintiff benefits [TR 8-27]. On July 25, 2016, the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the Commissioner's final administrative decision [TR 1-3]. Plaintiff then brought this action under 42 U.S.C. §405(g), appealing the final decision.

On November 10, 2016, Plaintiff filed his Amended Complaint in this Court [Dkt. 5]. On March 28, 2017, the Administrative Record was received from the Social Security Administration [Dkt. 12]. Plaintiff filed his brief on July 31, 2017 [Dkt. 24], and the Commissioner filed a response on September 29, 2017 [Dkt. 25]. No reply brief by Plaintiff was filed.

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on June 12, 1962, making him fifty (50) years of age at the time of his alleged onset date, a "person closely approaching advanced age" [TR 248]. Plaintiff was fifty-two (52) years of age at the time of the ALJ's decision. Plaintiff has a high school education with some community college [TR 47-48]. Plaintiff has past relevant work experience as a delivery driver and oil and gas handyman [TR 66, 291-92, 305]. In addition, Plaintiff served on active duty in the United States Air Force for nine (9) years until February 1990 and then served in the reserves for an additional four (4) years [TR 1015].

### 2. *Relevant Medical Record Evidence*

Plaintiff asserts that he is disabled because of numerous impairments including severe Bipolar I disorder with psychotic features, generalized anxiety disorder, diabetes, social phobia, high blood pressure, high cholesterol, and bilateral hearing loss [TR 248-61, 290]. Plaintiff's

medical records reflect extensive treatment related to his bipolar disorder and generalized anxiety disorder by Tameka Lewis, Psy.D., at the Veterans Administration ("VA") Hospital in Bonham, Texas [TR 294, 316-17, 333]. Plaintiff's treatment records from the VA reflect that his mental health treatment was provided by Dr. Lewis and Nurse Practitioner JanMarie Fisher-Griffis from August 2012 to November 2013 [TR 408-10, 412-13, 416-23, 425-27, 435-52, 454-73, 475-94, 496-504, 509-17, 522-30, 538-68, 572-84, 586-88, 753-63].

In addition to Dr. Lewis and Nurse Fisher-Griffis, Plaintiff alleges he was also treated by Drs. Azim Fatima and Muneeza Hayee. Dr. Azim Fatima is alleged to have treated Plaintiff beginning in March 2014 [TR 1335]. On October 20, 2014, Dr. Fatima filled out a "Mental Impairment Questionnaire," wherein Dr. Fatima noted that Plaintiff had bipolar disorder with psychiatric features and a GAF of 40-50, and was prescribed Risperdal, risperidone, lithium, Zoloft, and clonazepam [TR 1335]. According to Dr. Fatima's "Mental Residual Functional Capacity Assessment", Plaintiff was "markedly limited" in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances, interact appropriately with the general public, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others [TR 1331-32]. Dr. Fatima also opined in his "Medical Source Statement of Ability to do Work-Related Activities (Mental)," that Plaintiff had marked limitations in the ability to carry out complex instructions, and make judgments on complex work-related decisions [TR 1339].

Dr. Muneeza Hayee is alleged to have treated Plaintiff beginning in 2012, and to have seen Plaintiff every two weeks for "treatment/medication" [TR1349]. On January 30, 2015, Dr. Hayee filled out a "Mental Impairment Questionnaire," wherein he stated that in addition to various other

ailments, Plaintiff had bipolar disorder with psychiatric features and a GAF of 30-35 [TR 1349]. Dr. Hayee completed a "Mental Residual Functional Capacity Assessment", wherein he opined that Plaintiff was "markedly limited" in the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal workday and workweek without interruptions, interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, respond appropriately to changes in work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others [TR 1342-43]. Dr. Hayee also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)," wherein he opined that Plaintiff had extreme limitations in the ability to understand, remember, carry out, and make judgments on simple and complex work-related decisions, interact appropriately with supervisors, and respond appropriately to usual work situations and to changes in a routine work setting [TR 1346-47].

### 3. *Hearing Testimony*

At Hearing, Plaintiff, Medical Expert Alvin Smith, Ph.D. ("Dr. Smith"), witness Mark Witham ("Mr. Witham"), and Vocational Expert ("VE") Talesia Beasley each testified. [TR 41-71].

### a. *Plaintiff's testimony*

Plaintiff testified that the onset of his disability began on August 17, 2012, the day he "kind of lost it" at work [TR 45]. Plaintiff testified that he was late to work and his co-worker attempted to write him up, he got upset, stormed out, quit the job, and never went back [TR 45]. Plaintiff testified that he had been receiving treatment at the VA hospital for three (3) years for "bipolar and paranoia," anxiety disorder, and social phobia [TR 49]. Plaintiff lives with his long-time friend, Mr. Witham, who helps him with his daily activities including remembering to take medications for his mental health issues. Plaintiff stated that he often has a hard time standing, staying awake, remembering things, and gets confused. [TR 50]. He further testified that in relation to his mental health problem he often "hears music at night sometimes in my head that's nowhere to be found," "hear muffled voices," and "think some things happen that don't ever happen" [TR 52]. Plaintiff indicated at Hearing that his diabetes is "essentially controlled" [TR 53]. Plaintiff recalled that on or about August 15, 2012, he and his friend, Mr. Witham, got in an argument where he "lost his temper and starting being mean to him and chasing him around the room and punched him…and ended up going to jail" [TR 54-55]. He was hospitalized at the VA and was diagnosed with Bipolar I disorder, mixed with psychotic features and was prescribed Risperidone. Plaintiff testified that he was under the care of a mental health counselor, attended hour long session every two weeks, and that since taking Risperidone he had not had episodes where he "lost control of himself" [TR 52-53].

### b. **Medical Expert Testimony**

Dr. Smith testified that he agreed with the diagnosis of bipolar disorder and separate anxiety-related disorder and felt that those were the only medically-determinable impairments Plaintiff suffered and further agreed that Plaintiff was being properly and accurately treated.

Dr. Smith testified that Plaintiff engaged in the outpatient program which involved individual therapy, group therapy, some skills building, intervention and medication. According to the VA notes through the latter part of 2013, Dr. Smith testified that Plaintiff had a good response to the intervention and the status examination "has cleared considerably, and the doctor described him as pretty stable on the medication" [TR 58]. Dr. Smith testified that his rating on restriction of daily living would be in the "mild category"; social functioning would be in the "moderate category"; concentration, persistence and pace would be in the "moderate category" and that he believes Plaintiff has a "cognitive capacity to manage semi-skilled work" but that he would "limit him to just incidental contact with the public" [TR 59-60].

### c. *Witness Testimony*

Mr. Witham, a long-time friend of Plaintiff testified that Plaintiff has problems with "anxiety, social anxiety, making decisions" is very "lethargic" and sleeps a "lot because of his medication." Mr. Witham testified that Plaintiff is "okay with people that he's familiar with" but "does not do well in large groups" and that there have been incidents were Plaintiff has lost control of his mental faculties, but the medications help. [TR 62-65].

### d. *Vocational Expert Testimony*

The VE also appeared at Hearing and provided testimony in response to hypotheticals [TR 66-70]. Relevant here, the ALJ asked the VE to:

> Consider a hypothetical individual of the claimant's age, with the education and work background as indicated, and first assume that this hypothetical individual is able to lift and carry 50 pounds occasionally, 25 pounds frequently, sit, stand and walk six out of eight hours in a normal work day; no postural limitations; able to perform semi-skilled work that involves detailed but not complex instructions and detailed but not complex tasks; limited to occasional interaction with supervisors, co-workers, and the general public.

The ALJ then asked the VE if such a hypothetical individual could perform Plaintiff's past relevant work, to which the VE answered negatively [TR 67]. The VE testified that other work that might be within such abilities would be a truck load checker (light,[1] Special Vocational Preparation ("SVP")[2] of 3). The VE provided a further "light work" example of a freight inspector (light, SVP 3) and order filler (light, SVP 3). The ALJ then asked the VE to consider the next hypothetical involving "light work" that is "simple and unskilled," to which the VE responded that an assembly line worker (light, SVP of 2), an order caller (light, SVP 2) and a wire assembler (light, SVP of 2) would fit into such category of work [TR 66-70].

## III.  FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant

---

[1] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary, Light, and Medium work are defined as follows:
  (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
  (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involve sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
  (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. § 404.1567.
[2] SVP is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991). Using the skill level definitions in 20 C.F.R. § 404.1568 and § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

   *2.     ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 10-27]. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2012, the alleged onset date, and any work done after that date was not performed at a substantial gainful activity level [TR 11]. At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus and bipolar disorder. [TR 11-16]. At step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [TR 16]. At step four, the ALJ found that Plaintiff has

the residual functional capacity "to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently, as well as sit, stand, and/or walk 6 hours (each) out of an 8-hour workday," and is reduced by inability to understand, remember and carry out detailed but not complex instructions. [Plaintiff] requires work that only involves occasional interaction with supervisors, co-workers and the general public" [TR 18]. Continuing the step four analysis, the ALJ then determined that Plaintiff "does not retain the residual functional capacity to perform his past relevant work activity, either as he performed it or as it generally performed in the national economy" [TR 25].

At step five, considering Plaintiff's age, education, work experience, and RFC, and relying on VE testimony, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform through his date last insured [TR 26]. Accordingly, the ALJ determined Plaintiff was not disabled for purposes of the Act, and therefore he was not entitled to receive disability insurance benefits or supplemental security income during the relevant period [TR 26].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any

conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a) (4).

## ANALYSIS

Plaintiff's first and only point of appeal is that the ALJ failed to properly weigh the medical opinions of Plaintiff's treating physicians, Drs. Hayee and Fatima [Dkt. 24 at 3]. Plaintiff contends that the ALJ did not consider the relevant 20 C.F.R. §§ 404.1527(c) and/or 416.927(c) factors before rejecting their opinions.

### *Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with. . .other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[3] But the ALJ is "free to reject the opinion of any physician

---

[3] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the Court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006), *with* 20 C.F.R. § 404.1527

MEMORANDUM OPINION AND ORDER − Page 10

when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 456. As stated clearly in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted); *see, e.g., Greenspan*, 38 F.3d at 237.

***Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight***

SSA regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2); *accord* 20 C.F.R. § 416.927(c)(2) (mental impairments). Section 416.927(c)(2) requires the ALJ to consider specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *Id.* Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* § 416.927(c) (listing factors to consider). The ALJ must consider all six of these factors if "controlling weight" is not given to a treating physician's medical opinions. *Id.* ("Unless we give a treating source's opinion controlling weight under paragraph

---

(Aug. 24, 2012). The Court further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) shall apply.

(c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

Notably, in *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466-67.

### *Weight Given to Drs. Hayee and Fatima*

As an initial matter, Commissioner argues that neither Dr. Hayee, nor Dr. Fatima, is a treating physician. The Court rejects this argument. Throughout his Notice of Decision, the ALJ consistently refers to both Drs. Hayee and Fatima as Plaintiff's treating physicians [TR 20, 22, 24]. Moreover, up and until the Commissioner's response brief, no one has disputed Drs. Hayee or Fatima's status as Plaintiff's treating physicians. The medical opinions of Drs. Hayee and Fatima were not afforded less weight in the ALJ's Notice of Decision because they were considering non-treating sources. Commissioner's argument that Drs. Hayee and Fatima were not treating sources is an impermissible *post hoc* rationalization of the ALJ's decision. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*

*v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Hill v. Comm'r, SSA*, No. 4:16-CV-00025-CAN, 2017 WL 1049624, at *5–8 (E.D. Tex. Mar. 20, 2017) (court rejected Commissioner's argument that physician was not the plaintiff's treating physician where the ALJ clearly considered physician as the plaintiff's treating physician); *Jimenez v. Commissioner, SSA*, No. 4:16-CV-267-ALM-CAN (E.D. Tex. Aug. 16, 2017), *report and recommendation adopted by* No. 4:16-CV-267-ALM-CAN (E.D. Tex. Sept. 21, 2017) (same) (citing *Staley v. Astrue*, No. 4:12-cv-184, 2013 WL 2950057, at *4 (E.D. Tex. June 13, 2013) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-69 (1962))).

Accordingly, the Court turns to analyze Plaintiff's contention that the ALJ applied incorrect legal standards to the opinions of Plaintiff's treating physicians, Drs. Hayee and Fatima. The ALJ determined Plaintiff had RFC to "lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently, as well as sit, stand and/or walk 6 hours (each) out of an 8-hour workday" [TR 18]. The ALJ also included in Plaintiff's RFC an "inability to understand, remember, and carry out detailed, but not complex instructions," and "work that only includes occasional interaction with supervisors, co-workers, and the general public" [TR 18]. In determining the RFC, the ALJ assigned "little weight" to Drs. Hayee and Fatima's assessments as they were "inconsistent with the medical evidence of record as a whole" [TR 24]

To reiterate, Dr. Hayee assessed that Plaintiff was "markedly limited" in the ability to remember locations, work-like procedures, simple instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public, coworkers or peers [TR 1342-43]. Dr. Fatima similarly opined that Plaintiff was "markedly limited" in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public [TR 1331-32].

The ALJ referenced both Drs. Hayee and Fatima in his Notice of Decision, extensively detailing the six reports issued by such doctors related to Plaintiff's disability status. Indeed, the ALJ spent nearly two pages per doctor, thoroughly examining Drs. Hayee and Fatima's submitted medical assessments in the context of the entire record [TR 20-24]. In addition, in contrasting their opinions against the other record evidence, the ALJ noted that the VA medical evidence of record demonstrates that:

> Plaintiff routinely organizes open house for a museum, conducts tours through the museum, has taken a trip to England, began his own T-shirt business, enjoys doing odd jobs for neighbors and state sat one point that [Plaintiff] was remodeling the kitchen of a friend, with whom he was staying. The VA records routinely noted global assessment functioning scores ranging from 60 to 63, after [Plaintiff] stabilized on medication.

[TR 24]. As such, the ALJ averred that "Doctors Fatima and Hayee, were excessively conservative in their assessments of [Plaintiff's] residual functional capacity." The ALJ went on to specifically identify contrasting medical evidence, pointing out that Drs. Hayee and Fatima's assessments "are at odds, for example, with the December 2012 opinion of a VA physician[,] Tameka Lewis PhD, who noted 'generally average mood with infrequent days of mild low mood that did not impair his functioning' and assessed a GAF score of 60" [TR 24]. After conducting such analysis, the ALJ stated that he gave their medical opinions "little weight" because "they are inconsistent with the medical evidence of record as a whole" [TR 24].

The Court finds, upon review and consideration of the record as a whole, that the ALJ's reasoning in connection with the weighing of Drs. Hayee and Fatima's opinion is sufficient to support good cause, thereby making analysis of the §§ 404.1527, 416.927 factors unnecessary. As noted above, the ALJ is free to reject the opinion of a treating physician when good cause is shown. *Newton*, 209 F.3d at 455–56. An ALJ may show good cause where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic

techniques, or is otherwise unsupported by the evidence." *Id*. at 455-56 (internal citations and quotation marks omitted). In the instant case, the ALJ's decision thoroughly explains Drs. Hayee and Fatima's assessments then contrasts this information with the remainder of the medical records, including specifically Dr. Lewis's (another of Plaintiff's treating physicians) contradictory assessment[TR at 20-24]. The ALJ's opinion also outlines Plaintiff's activities of daily living—all supported by evidence of record—which undermine Drs. Hayee and Fatima's assessments of extreme mental limitations to Plaintiff's ability to work. The ALJ's decision is supported by the record.[4] *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). The Court therefore finds that as to the sole issue on appeal, the ALJ did not err when he rejected and/or discounted the opinions of Plaintiff's treating sources, Drs. Hayee and Fatima.

## CONCLUSION

For the foregoing reasons, the Court finds that the decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income is **AFFIRMED**.

**SIGNED this 23rd day of March, 2018.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[4] The Commissioner also argues that the ALJ considered Nurse Practitioner Fisher-Griffis's treatment records as controverting first-hand medical evidence. Although nurse practitioners qualify as "other sources" whose opinions are not entitled to controlling weight, the ALJ may still consider their opinions and records as evidence of impairments and their severity. *Jimenez*, No. 4:16-CV-267-ALM-CAN (quoting *Clore v. Colvin*, No. 2:13-CV-00023-FDW, 2014 WL 294640, at *6 (W.D.N.C. Jan. 27, 2014)).